TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-711 |
| of | : | |
| | : | November 17, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE DON PERATA, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1.        Does a commercial salmon vessel permit constitute personal property of the permit holder so as to allow its sale without transfer of the vessel owned by the permit holder?

2.        Does the Department of Fish and Game's refusal to renew a commercial salmon vessel permit if the renewal application is received or postmarked after the expiration of the permit violate the constitutional due process rights of the permit holder?

3.        May the holder of an expired commercial salmon vessel permit appeal to the Fish and Game Commission for reinstatement of the permit?

CONCLUSIONS

1.        A commercial salmon vessel permit does not constitute personal property of the permit holder so as to allow its sale without transfer of the vessel owned by the permit holder.

2.        The Department of Fish and Game's refusal to renew a commercial salmon vessel permit if the renewal application is received or postmarked after the expiration of the permit does not violate the constitutional due process rights of the permit holder.

3.        The holder of an expired commercial salmon vessel permit may appeal to the Fish and Game Commission for reinstatement of the permit.

ANALYSIS

The Legislature has enacted a comprehensive statutory scheme (Fish & G. Code, §§

8230-8248), **Footnote No. 1** regulating commercial salmon fishing in California. Section 8230 explains the purposes of the legislation:

"(a) The Legislature finds and declares that commercial salmon fishing is in the public interest and that the preservation of commercial salmon fishing directly affects the health and welfare of the public. The Legislature further finds and declares that, due to past declines in salmon stocks, the increase in the quality and value of salmon on the market, the number and types of vessels being used, the commensurate salmon fishing potential of the commercial salmon fishing fleet, and the demand for entry into the commercial salmon fishery, it is necessary and proper to limit the persons who are eligible to take salmon for commercial purposes and to regulate the amount of salmon that may be taken by restricting the number and salmon fishing potential of the vessels in the commercial salmon fishing fleet in order to preserve and rebuild the salmon resource, to protect commercial salmon fishing, and thereby to protect the health and welfare of the public.

"(b) The Legislature further finds and declares the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(4) There are more than enough commercial salmon fishing vessels for which commercial salmon fishing permits have been issued to harvest the less than 10 million pounds of salmon that are currently available annually. With the present fleet makeup between large vessels and small vessels and between full-time and part-time fishermen, it is estimated that the present resource capacity may accommodate a fleet of not more than 2,500 permitted vessels. Therefore, no new permits should be issued until the time that the fleet size falls below 2,500 permitted vessels. Adequate provision for entry of new persons or vessels to the commercial salmon fishery is afforded by transfers of vessels for which permits have been issued and renewed and by transfers of those existing permits to vessels of the same or less salmon fishing potential."

The three questions presented for analysis concern the rights of vessel owners who hold commercial salmon vessel permits. May a permit be sold without transfer of the vessel owned by the permit holder, does a failure to renew a permit by the Department of Fish and Game ("Department") violate the permit holder's constitutional rights, and may a permit holder of an expired permit appeal to the Fish and Game Commission ("Commission") for reinstatement of the permit?

1.        Sale of a Permit

The first issue to be resolved is whether a commercial salmon vessel permit may be sold by the permit holder without transferring the vessel. We conclude that it cannot be independently sold.

A "commercial salmon vessel permit" is defined as "an annual permit issued by the department to an owner of a commercial fishing vessel for use of that vessel to take salmon for commercial purposes and shall not be considered personal property." (§ 8231, subd. (d).) By definition, then, a permit is "for use of that vessel" only. The vessel owner must attach the permit to the vessel so that the permit "is visible at all times." (§ 8232, subd. (c).) It is unlawful for any person, other than the Department, to transfer a permit. (§ 1052, subd. (a).)

If a vessel for which a permit has been issued is transferred, the Department must transfer the permit to the new owner upon notification of the change in ownership. (§§ 8233.5, 8237.) **Footnote No. 2** Similarly, a vessel owner who wishes to sell the vessel for which the permit has been issued and replace it with another boat may have the Department transfer the permit to a new boat that has the same fishing potential as the original vessel. (§§ 8239-8241.)

In sum, the owner of a vessel with a particular fishing potential receives a permit that is an

authorization to use the vessel for fishing. The permit is to fish only from that vessel; the right cannot be sold separately from transfer of the vessel. Accordingly, the permit is not personal property (§ 8231, subd. (d)), but becomes an incident of vessel ownership.

We conclude that a commercial salmon vessel permit does not constitute personal property so as to allow its sale without transfer of the vessel owned by the permit holder.

2.	Rights of Due Process

The second question to be resolved is whether a permit holder's constitutional rights of due process are violated when the Department refuses to renew a permit because the renewal application is received or postmarked after the expiration of the permit. We conclude that no constitutional violations occur in such circumstances.

Although issued for particular vessels, commercial salmon vessel permits are not issued for indefinite periods. A commercial salmon vessel permit is "an annual permit." (§ 8231, subd. (d).) It must show its expiration date on its face. (§ 8233.) Prior to the permit expiration date, the Department is required to send written notice of the need for renewal and a permit renewal application to the owner of a vessel at the owner's address of record. The notice must include instructions on how to apply for renewal. (§ 8236.) Renewal procedures are specified in section 8235:

"(a) The owner of a permitted vessel, or that owner's agent, may apply for renewal of the permit annually on or before March 31, upon payment of the fees established under subdivision (b), without penalty. Upon receipt of the application and fees, the department shall issue the permit for use of the permitted vessel in the subsequent permit year only to the owner of the permitted vessel.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) If an owner to whom a permit has been issued, or that owner's agent, applies for renewal of the permit, and the application for the renewal is received in an office of the department, or is postmarked if mailed, after March 31 but on or before April 30, the department shall accept the application and, upon payment of an additional late fee of one hundred dollars ($100), the department shall issue the permit for use of the permitted vessel in the subsequent permit year.

"(d) If the department does not receive a vessel permit renewal application for any vessel for which a vessel permit has been issued, the department shall notify the owner of the vessel. The notice shall be in writing, shall be addressed to the owner at the address listed on his or her most recent vessel permit or vessel permit renewal application, and shall be sent by first-class mail not later than April 20. The notice shall include all of the following:

"(1) Instruction on how to apply for vessel permit renewal.

"(2) Information on the provisions of subdivision (c).

"(3) Information on the provisions of subdivision (f).

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) Except as provided in subdivision (c), the department shall not renew a permit for which the application for renewal is not received, or, if mailed, is received or postmarked after expiration of the permit."

Thus, a permit holder obtains only an annual permit and has no expectation that the permit will extend beyond its endorsed expiration date unless it is renewed. The holder is given notice of the need for renewal and a renewal application. (§ 8236.) If no renewal application is received by the Department, a notice that no renewal application has been received is mailed, and the permit holder then has an opportunity to renew, upon payment of a late fee. (§ 8235, subd. (d).)

Given the limited time period of a permit and the opportunity to renew upon payment of the appropriate fees, we find no constitutional due process rights **Footnote No. 3** being violated in refusing to renew a permit when submission of the renewal application does not comply with the requirements of the Fish and Game Code. (See *Paramount Convalescent Center, Inc.* v. *Department of Health Care Services* (1975) 15 Cal.3d 489, 494-497; *In re Christensen* (1890) 85 Cal. 208, 214.) Even in a case where the state takes action to revoke a business or professional license, principles of due process require only that the licensee be given notice reasonably calculated to apprise interested parties of the proposed action (i.e., notice mailed to an address of record) and an opportunity to present objections; actual notice is not required. (*Baughman* v. *Medical Board of California* (1995) 40 Cal.App.4th 398, 402; *Evans* v. *Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967.)

In the case of the non-renewal of a commercial salmon vessel permit, no vested right is taken away, since the permit expires by its own terms and by the permit holder's failure to submit a timely renewal application. Although no governmental action "revokes" the permit, the permit holder is nonetheless provided due process rights equivalent to that required for revocation of a government permit. Notice of the need to renew is given; a second notice is provided if no renewal application is received.

We conclude that the Department's refusal to renew a commercial salmon vessel permit because the renewal application is received or postmarked after the expiration of the permit does not violate the constitutional due process rights of the permit holder.

3.      Right to Appeal

The final question concerns whether a permit holder who has been denied renewal of a commercial salmon vessel permit by the Department may appeal the denial to the Commission. We conclude that the holder may appeal.

The answer to this question is found in the language of section 6246.6:

"A person . . . who has been refused renewal of a permit by the department . . . may appeal the . . . refusal . . . to the commission by submitting the appeal in writing to the commission within 60 days of the decision."

Section 8246.7 specifies the circumstances under which the Commission may order the permit renewed:

"(a) The commission shall . . . order the permit renewed . . . only if it finds one of the following grounds:

"(1) The permittee failed to submit an application and pay the fees for renewal on or before April 30 pursuant to Section 8235 and the failure to renew a permit until after the expiration date was due to death, physical illness, mental incapacity, or being called to active military duty, and the person was not reasonably able to have an agent renew the permit.

"(2) A lienholder of a permitted vessel, if the vessel is the property of the lienholder as a result of foreclosure, surrender, or litigation, can show loss due to the nonrenewal of a permit by the permittee, and the nonrenewal occurred without the knowledge of the lienholder.

"...............................................

"(b) Each appeal shall be heard and considered separately on its own merits."

We conclude that the holder of an expired commercial salmon vessel permit may appeal to the Commission for reinstatement of the permit.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Fish and Game Code are by section number only.

**Footnote No. 2**
The present law was adopted in 1988. (Stats. 1988, ch. 1164, § 2.) It has been erroneously suggested that prior law allowed the independent transfer of permits. The Legislature first required a permit specifically for salmon fishing (as opposed to a general commercial fishing license) in 1979; the permit was a "nontransferrable, revocable permit." (Stats. 1979, ch. 1096, § 1, repealed Stats. 1982, ch. 1336, § 9.) Since 1982 commercial salmon fishing permits have been issued for particular vessels and could not be independently transferred. (Stats. 1982, ch. 1486, § 20, repealed Stats. 1988, ch. 1164, § 2.)

**Footnote No. 3**
The federal Constitution provides: ". . . nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ." (U.S. Const., Amend. XIV, § 1), and the state Constitution similarly provides: "A person may not be deprived of life, liberty, or property without due process of law . . . ." (Cal. Const., art. I, § 7, subd. (a).)