[No. A132699. First Dist., Div. Five. Apr. 19, 2012.]

ANUNCIO L. SULLA, JR., Plaintiff and Respondent, v.
BOARD OF REGISTERED NURSING, Defendant and Appellant.

## Counsel

Kamala D. Harris, Attorney General, Alfredo Terrazas, Assistant Attorney General, Frank H. Pacoe and Jonathan D. Cooper, Deputy Attorneys General, for Defendant and Appellant.

Slote & Links, Adam G. Slote and Robert D. Links for Plaintiff and Respondent.

## OPINION

**NEEDHAM, J.**—Unprofessional conduct that is used as a basis for revoking or suspending a professional license must demonstrate an unfitness to practice that profession if the disciplinary action is to comport with due process. Business and Professions Code section 2762, in subdivisions (b) and (c),[1] provides that a licensed nurse engages in unprofessional conduct when he or she uses alcoholic beverages "to an extent or in a manner dangerous or injurious to himself or herself, any other person, or the public," or is convicted of a criminal offense involving the consumption of alcohol.

■ Here, the superior court reversed a disciplinary action taken by the Board of Registered Nursing (Board) against a licensee who was convicted of a misdemeanor after he caused a single-car accident while driving with a blood-alcohol level in excess of the legal limit. The court found that the Board's order imposing discipline was contrary to a factual finding by the administrative law judge (ALJ), in connection with a separate allegation, that the licensee's conduct and his resulting conviction were not "substantially related to the qualifications, functions or duties" of a nurse. We conclude that the discipline imposed by the Board was authorized, and reverse the judgment of the superior court.

### BACKGROUND

Anuncio L. Sulla, Jr., the respondent in this appeal, is a registered nurse licensed by the Board. He lost control of his car one night while driving home to San Jose from a party in San Francisco and collided with the center divider on the 101 Freeway. A breathalyzer test measured his blood-alcohol level at 0.16 percent. Sulla admitted feeling "tipsy" when he left the party, but believed he was "okay" to drive.

As a result of this incident, Sulla pled no contest to a misdemeanor count of driving with a blood-alcohol level of 0.08 percent or higher (Veh. Code, § 23152, subd. (b)) and was placed on three years' probation. The Board filed an accusation alleging that he was subject to discipline under sections 490, 2761, subdivision (f) and 2762. The matter proceeded to a hearing before an ALJ.

At the hearing,[2] the evidence showed that Sulla was a highly respected nurse who had no record of prior disciplinary actions. Colleagues had never

---

[1] Further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] The administrative record has not been included in the record on appeal. Our description of the evidence presented, which is not contested by either party, is taken from the ALJ's written decision.

seen signs that he was impaired on the job or had been drinking before he came in to work, and he did not have a habit of coming in late or calling in sick. A fellow nurse who was also a personal friend testified that Sulla rarely drank when they socialized together, and she had never seen him drink heavily. A board-certified psychiatrist who evaluated Sulla believed he did not meet the diagnostic criteria for alcohol abuse or dependence, and that his conviction "represents a single, isolated episode of poor judgment."

The ALJ ruled that there was no cause for discipline under sections 490 and 2761, subdivision (f), because both of those provisions require proof of a criminal conviction "substantially related to the qualifications, functions, or duties" of a registered nurse. He reasoned that Sulla's "single DUI conviction does not evidence, to a substantial degree, a present or potential unfitness to practice nursing in a manner consistent with the public health, safety or welfare."

Turning to the remaining allegations in the accusation, the ALJ concluded that discipline was appropriate under section 2762, subdivision (b), which provides that it is unprofessional conduct for a nurse to "[u]se . . . alcoholic beverages, to an extent or in a manner dangerous or injurious to himself or herself, any other person, or the public or to the extent that such use impairs his or her ability to conduct with safety to the public the practice authorized by his or her license." The ALJ also ruled that discipline was appropriate under section 2762, subdivision (c), which defines as unprofessional conduct the conviction "of a criminal offense involving the . . . consumption . . . or self-administration" of alcohol.

In his written decision, the ALJ noted that section 2762, subdivisions (b) and (c), unlike sections 490 and 2761, subdivision (f), did not require a separate finding that the conduct or criminal conviction serving as the basis for the discipline be "substantially related to qualifications, functions or duties" of a registered nurse. The ALJ declined to find that such a requirement was necessary to avoid constitutional infirmity, noting that an administrative agency has no power to declare a statute unconstitutional, and no court had held that the lack of a "substantial relationship" requirement rendered section 2762 unconstitutional.

Based on these findings, the ALJ ordered Sulla's license revoked, but stayed the revocation subject to three years of probation. The Board adopted the ALJ's decision, and Sulla challenged the Board's action by filing a petition for writ of administrative mandate in the superior court. (Code Civ. Proc., § 1094.5.)

In support of his writ petition, Sulla argued that the Board abused its discretion by imposing discipline in a case where the ALJ had specifically found that his alcohol-related conviction did not bear a substantial relationship to his qualifications to practice nursing. He also argued that imposing discipline for a single alcohol-related misdemeanor conviction violated his right to equal protection under the law, because physicians must suffer two such convictions before they are subject to discipline.

The superior court granted the writ. Its order states, "In its Decision, [the Board] made a specific finding that [Sulla's] single conviction for driving under the influence of alcohol was not substantially related to the qualifications, functions or duties of a registered nurse. Accordingly, [the Board] dismissed allegations that the conviction constituted cause for discipline pursuant to . . . sections 490(a) and 2761(f). [The Board] then reached a legally inconsistent decision by finding, despite [the Board's] above-described finding of a lack of a substantial relationship, that the conviction constitutes cause for discipline under . . . sections 2762(b) and (c). Because discipline may not be imposed unless this substantial relationship exists, the imposition of discipline was unwarranted in light of the Board's factual findings."

The Board appeals. It argues that section 2762 establishes a conclusive presumption that certain types of alcohol-related misconduct warrant professional discipline. The Board submits that this presumption cannot be refuted by a purportedly contradictory finding that the misconduct was not "substantially related to the qualifications, functions and duties of a nurse," as is required for discipline under other statutes.

### STANDARD OF REVIEW

A trial court reviewing an administrative decision that imposes discipline on a professional licensee must exercise its independent judgment based on the evidence before it. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 789 [72 Cal.Rptr.2d 624, 952 P.2d 641].) As an appellate court, we review any factual findings by the trial court for substantial evidence, but independently determine issues of law. (*Marek v. Board of Podiatric Medicine* (1993) 16 Cal.App.4th 1089, 1095–1096 [20 Cal.Rptr.2d 474].) The case before us presents issues of law based on undisputed facts, to which we apply an independent standard of review. (See *Donaldson v. Department of Real Estate* (2005) 134 Cal.App.4th 948, 954 [36 Cal.Rptr.3d 577] (*Donaldson*).)

## DISCUSSION

█ The holder of a professional license has a property interest in the right to practice his or her profession, which cannot be taken away or restricted without due process. (*Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 43 [124 Cal.Rptr.2d 701, 53 P.3d 119].) Due process requires that the conduct used as a basis for discipline relate to the practice of the particular profession and demonstrate an unfitness to practice that profession. (*Watson v. Superior Court* (2009) 176 Cal.App.4th 1407, 1416 [98 Cal.Rptr.3d 715] (*Watson*); *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 769 [117 Cal.Rptr.2d 445] (*Griffiths*).) Thus, there must be a logical connection or "nexus" between a licensee's conduct and the qualifications, functions, or duties of the profession. (*Watson*, at pp. 1416–1417; *Griffiths*, at p. 769.)

The ALJ found that discipline against Sulla was authorized by section 2762, which provides in relevant part, "In addition to other acts constituting unprofessional conduct within the meaning of this chapter [(div. 2, ch. 6, Nursing)] it is unprofessional conduct for a person licensed under this chapter to do any of the following: [¶] . . . [¶] (b) Use . . . alcoholic beverages, to an extent or in a manner dangerous or injurious to himself or herself, any other person, or the public or to the extent that such use impairs his or her ability to conduct with safety to the public the practice authorized by his or her license. [¶] (c) Be convicted of a criminal offense involving the prescription, consumption, or self-administration of any of the substances described in subdivisions (a) or (b) of this section . . . , in which event the record of the conviction is conclusive evidence thereof." The statute does not explicitly require the Board to find a nexus between the conduct described and the licensee's professional fitness.

Sulla does not dispute that his act of drinking and driving, and the resulting criminal conviction, fell within the literal language of section 2762. He argues, rather, that discipline cannot be constitutionally imposed under section 2762 unless a nexus between his misconduct and his professional qualifications is found to exist. Sulla argues that because the ALJ specifically found that his conduct and conviction were not substantially related to the qualifications, functions and duties of a nurse, discipline was not constitutionally permissible. This was the position adopted by the superior court when it granted the writ.

Although Sulla's argument and the trial court's order frame the issue in terms of inconsistent factual findings by the Board, the real issue in this case is whether the Legislature may authorize professional discipline based upon

an alcohol-related conviction or the use of alcohol in a dangerous way, absent a separate determination of a nexus or relationship to the licensee's professional fitness. We have found no published decisions that resolve this issue with respect to section 2762, which governs only nurses, but three Court of Appeal decisions have addressed parallel statutes providing for the discipline of physicians.

In the first of these decisions, *Weissbuch v. Board of Medical Examiners* (1974) 41 Cal.App.3d 924 [116 Cal.Rptr. 479] (*Weissbuch*), disciplinary proceedings were commenced against a doctor after he pled guilty to possessing marijuana. (*Id.* at pp. 926–927.) Former section 2384 defined as unprofessional conduct any violation of a state law regarding narcotics or dangerous drugs, and former section 2390 (the predecessor of § 2239) identified the use of certain narcotics as unprofessional conduct. (41 Cal.App.3d at pp. 926–927.) The Court of Appeal held that discipline was improper because the law had been amended to remove marijuana from the list of narcotics or dangerous drugs covered by these sections, but it noted that the Legislature could "constitutionally provide for the disciplining of a licentiate in the medical profession on the basis of conduct involving personal use of narcotics or on the basis of a violation of the law regulating narcotics without any showing that the conduct affected the doctor's professional ability. . . ." (*Id.* at p. 928.) "The Legislature which presumptively legislated in a constitutional fashion [citation], has determined that conviction of a doctor for violation of the laws regarding narcotics and dangerous drugs or a doctor's personal non-prescribed use of such substances evidences a sufficient danger to the public that sanctions should be imposed regardless of the availability of evidence that such conduct in fact impaired the doctor's professional skill. [¶] There is no basis, constitutional or otherwise, for the courts to override that legislative determination by imposing a special requirement of 'nexus' between the proscribed conduct and professional conduct." (*Id.* at p. 929.)

In *Griffiths, supra*, 96 Cal.App.4th 757, the second of the cases relevant to our analysis, disciplinary charges were filed against a physician who had been convicted of three misdemeanor drunk driving offenses. (*Id.* at p. 765.) The charges were based on section 2239, subdivision (a), which provides in relevant part that "more than one misdemeanor . . . involving the use, consumption, or self-administration of [alcoholic beverages] . . . constitutes unprofessional conduct. The record of the conviction is conclusive evidence of such unprofessional conduct." (96 Cal.App.4th at p. 765.) The ALJ in *Griffiths* had ruled that discipline was inappropriate because there was no inherent nexus between driving while under the influence and the fitness to

practice, but the Medical Board of California declined to adopt this recommendation and instead placed the doctor on probation. (*Id.* at pp. 763, 765.) It determined that under section 2239, there was no need to show that the physician was impaired while practicing medicine. (96 Cal.App.4th at pp. 763, 765.) The Court of Appeal upheld the Board's ruling imposing discipline. (*Id.* at pp. 762, 774.)

The court in *Griffiths* explained that while section 2239 did not explicitly require a showing of a nexus between alcohol-related convictions and the fitness to practice medicine, the statute was presumed constitutional. (*Griffiths, supra*, 96 Cal.App.4th at pp. 769–770.) "By defining more than one misdemeanor conviction involving alcohol consumption as unprofessional conduct in section 2239, subdivision (a), the Legislature has determined that a nexus exists between those convictions and a physician's fitness or competence to practice medicine. The issue is whether such convictions have a 'logical connection' to a physician's fitness . . . . [Citation.]" (*Id.* at p. 770.) The court concluded that a nexus exists, given that driving under the influence "reflect[s] a lack of sound professional and personal judgment," threatens the safety of the public, and demonstrates both a disregard of the medical knowledge of the effects of alcohol and the legal prohibitions against drinking and driving. (*Ibid.*)

As explained by the court in *Griffiths*, "For a nexus to exist between the misconduct and the fitness or competence to practice medicine, it is not necessary for the misconduct forming the basis for discipline to have occurred in the actual practice of medicine. '[The Medical Board] is authorized to discipline physicians who have been convicted of criminal offenses not related to the quality of health care.' [Citation.]" (*Griffiths, supra*, 96 Cal.App.4th at p. 771.) "Section 2239, subdivision (a), by defining convictions for use, consumption, or self-administration of alcoholic beverages as unprofessional conduct, therefore satisfies the constitutional requirement that a nexus exists between the disciplined conduct and the physician's fitness and competence to practice medicine *without any additional showing that the convictions or the alcohol consumption impaired [the physician's] practice of medicine.*" (*Id.* at p. 774, italics added.) Section 2239, subdivision (a) created a conclusive presumption that the requisite convictions amounted to professional misconduct, and this presumption was constitutional given the rational relationship it bore to that ultimate fact. (96 Cal.App.4th at pp. 776–779.)

Finally, in *Watson, supra*, 176 Cal.App.4th 1407, the court considered an order by the medical board imposing discipline on a physician under another

clause of section 2239, subdivision (a), which defines as unprofessional conduct "The use . . . or administering to himself or herself, . . . of alcoholic beverages, to the extent, or in such a manner as to be dangerous or injurious to the licensee, or to any other person or to the public, or to the extent that such use impairs the ability of the licensee to practice medicine safely . . . ." (176 Cal.App.4th at pp. 1411–1414, 1417.) The doctor, who had been arrested several times for driving under the influence, although he had not been convicted of any offense, argued that section 2239 was unconstitutional to the extent it authorized "discipline for after-hours conduct without a showing of a nexus between the particular conduct in question and the ability to practice medicine." (176 Cal.App.4th at p. 1418.) The Court of Appeal rejected the claim.

The court in *Watson* analyzed the earlier decisions in *Weissbuch* and *Griffiths*, and concluded: "[W]hile there must be a nexus or 'logical connection' between the type of misconduct that forms the basis for physician discipline and the ability of the physician to practice medicine, that nexus is established for constitutional purposes if the conduct enumerated, here the use of alcohol to the extent, or in such manner as to be dangerous or injurious to the licensee, or to any other person or to the public, is logically connected to a physician's fitness to practice medicine." (*Watson, supra*, 176 Cal.App.4th at p. 1421.) It disapproved of aspects of the decision in *Grannis v. Board of Medical Examiners* (1971) 19 Cal.App.3d 551 [96 Cal.Rptr. 863] (*Grannis*), which, after holding that the Legislature could constitutionally define unprofessional conduct to include the consumption of alcoholic beverages in a dangerous manner, went on to review the record to determine whether it contained substantial evidence that the physician's use of alcoholic beverages indicated professional unfitness in that particular case. (*Watson*, at pp. 1421–1423; *Grannis*, at pp. 562–563.) No case-by-case review of the relationship between the dangerous use of alcohol and unfitness to practice was necessary when the Legislature had statutorily defined such conduct to constitute unprofessional conduct. (*Watson*, at pp. 1421–1423.)

██ As with the statutes considered in *Weissbuch*, *Griffiths* and *Watson*, there is a nexus or logical relationship between the professional fitness of a registered nurse and the alcohol-related misconduct defined by section 2762, subdivisions (b) and (c). In light of this nexus, section 2762 comports with due process and supplies a basis for discipline even in the absence of a finding of professional unfitness in a particular case. The ALJ's finding that Sulla's conduct was not substantially related to his professional qualifications for purposes of the allegations under sections 490 and 2761, subdivision (f)

cannot be used to circumvent the conclusive presumption that the conduct described by section 2762 amounts to unprofessional conduct. (*Griffiths, supra,* 96 Cal.App.4th at pp. 776–779; see also *Donaldson, supra,* 134 Cal.App.4th at p. 954; *Krain v. Medical Board* (1999) 71 Cal.App.4th 1416, 1424 [84 Cal.Rptr.2d 586] [whether a conviction is " 'substantially related' " to professional qualifications is question of law, not fact].)

Sulla argues that the cases cited above did not consider the import of section 490, which applies broadly to professionals licensed under the Business and Professions Code and provides in relevant part: "(a) In addition to any other action that a board is permitted to take against a licensee, a board may suspend or revoke a license on the ground that the licensee has been convicted of a crime, if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the license was issued. [¶] (b) Notwithstanding any other provision of law, a board may exercise any authority to discipline a licensee for conviction of a crime that is independent of the authority granted under subdivision (a) *only if the crime is substantially related to the qualifications, functions, or duties of the business or profession for which the licensee's license was issued.*" (Italics added.) Sulla argues that as a matter of statutory interpretation, section 490 modifies section 2762 and prohibits discipline in the absence of a specific finding that an alcohol-related offense was "substantially related" to his fitness as a nurse. We are not persuaded.

It is true that " 'a statute can constitutionally bar a person from practicing a lawful profession only for reasons related to his fitness or competence to practice that profession.' " (*Arneson v. Fox* (1980) 28 Cal.3d 440, 448 [170 Cal.Rptr. 778, 621 P.2d 817] (*Arneson*).) To comport with due process, " 'standards for excluding persons from engaging in [a profession] must bear some *reasonable relation* to their qualifications to engage in those activities.' " (*Ibid.,* italics added.) The "substantially related" standard of section 490 was initially adopted due to concerns that some statutes allowed professional discipline to be based on amorphous standards of "good moral character" or "moral turpitude," which were not necessarily related to professional qualifications. (See *Petropoulos v. Department of Real Estate* (2006) 142 Cal.App.4th 554, 562–564 [47 Cal.Rptr.3d 812] (*Petropoulos*).)[3] That

---

[3] In *Petropoulos*, Division One of this court held that the version of section 490 which was then in effect did not set forth an independent ground for discipline, but worked in tandem with section 10177, subdivision (b), a provision allowing the discipline of a licensed real estate broker based on a conviction involving moral turpitude. (*Petropoulos, supra,* 142 Cal.App.4th at p. 567.) In response to this decision, the Legislature amended section 490 to its current form, which clarifies that a conviction of a crime substantially related to the qualifications, functions, or duties of a licensee is an independent ground for suspending or revoking a license. (See *Robbins v. Davi* (2009) 175 Cal.App.4th 118, 123, fn. 5 [95 Cal.Rptr.3d 792].)

standard is *sufficient* to satisfy due process (*Arneson*, at p. 448), but it does not follow that the "substantial relationship" must be independently proven where the Legislature has properly determined that certain types of convictions are related to a licensee's professional qualifications. The Legislature may define a conviction involving the use of alcohol as unprofessional conduct by a medical professional without running afoul of the due process clause. (*Griffiths, supra*, 96 Cal.App.4th at pp. 774, 776–777.) It has done so in this case under section 2762, subdivision (c), and no further finding under section 490, subdivision (b) is required.

 In any event, section 490, subdivision (b), applies only to disciplinary actions that are based on a criminal conviction. Sulla was also found to have committed unprofessional conduct under section 2762, subdivision (b), based on his use of alcohol in a manner dangerous to himself or others, conduct which bears a sufficient nexus to the qualifications of a nurse for the statute to withstand constitutional scrutiny and to which section 490 does not on its face apply. (See *Watson, supra*, 176 Cal.App.4th at pp. 1418–1423.)

Sulla suggests that if we divorce section 2762 from the "substantially related" requirement of section 490, absurd consequences will follow. He posits that the Board would be empowered to revoke the license of a nurse based solely on a conviction for public intoxication (Pen. Code, § 647, subd. (f)), drinking while a passenger in a motor vehicle (Veh. Code, § 23221, subd. (b)) or having an open container of alcohol in a vehicle (Veh. Code, § 23223, subds. (a) & (b)), all minor offenses that would typically bear no relationship to a nurse's professional qualifications.

It bears emphasizing that the Board's authority to take disciplinary action against a licensed nurse derives from the state's inherent power to regulate the use of property to preserve public health, morals, comfort, order and safety. (*Griffiths, supra*, 96 Cal.App.4th at pp. 768–769.) "Administrative proceedings to revoke, suspend, or impose discipline on a professional license are noncriminal and nonpenal; they are not intended to punish the licensee, but rather to protect the public." (*Id.* at p. 768.) It is undoubtedly true that not every conviction involving alcohol warrants the suspension or revocation of a professional license; however, such a conviction may "reflect a personal problem involving alcohol consumption [citation], and it is not necessary to postpone the imposition of discipline until that personal problem affects the [professional] practice." (*Id.* at p. 779.) We are not here concerned with the reasonableness of the discipline imposed by the Board, which Sulla did not challenge in the writ proceeding below. The question is whether the

Legislature violated the Constitution by granting the Board the power to assert jurisdiction over one of its licensees based on an alcohol-related conviction or the use of alcohol in a dangerous manner. It did not.

Sulla summarily argues that subjecting him to discipline for a single alcohol-related misdemeanor conviction under section 2762, subdivision (c) violates his right to equal protection because more than one such conviction is required to impose discipline against a physician under section 2239, subdivision (a). We disagree.

We give great deference to a legislative decision to treat members of one profession differently from members of another, and apply a "rational basis" standard to such equal protection claims. (*Kenneally v. Medical Board* (1994) 27 Cal.App.4th 489, 498, 499–500 [32 Cal.Rptr.2d 504].) " ' "[T]he decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." ' " (*Id.* at pp. 499–500.)

Physicians and nurses both provide health care, but their education, licensing requirements, and day-to-day duties are not the same. The Legislature has developed comprehensive regulatory schemes for both groups, but there is no constitutional requirement that these schemes be identical. Appellant has not carried his threshold burden of showing that the state has adopted a classification that treats two or more *similarly situated* groups in an unequal manner. (*People v. Singh* (2011) 198 Cal.App.4th 364, 369 [129 Cal.Rptr.3d 461].)

Assuming for the sake of argument that physicians and nurses are similarly situated when it comes to discipline for alcohol-related convictions, Sulla's conviction was not the sole basis for the discipline in his case. The Board found that he had used alcohol in a manner dangerous to himself or others, in violation of section 2762, subdivision (b), conduct that would also support a disciplinary action against a physician under section 2239, subdivision (a). Because even a single instance of using alcohol in a manner that is dangerous to oneself or others constitutes unprofessional conduct by a physician, a single conviction for driving under the influence (an act that is necessarily dangerous to self or others) could support a disciplinary proceeding against a physician. Sulla has not demonstrated that he has been treated more harshly than a physician would have been under similar circumstances, and we reject his equal protection claim.

## *DISPOSITION*

The judgment (order granting petition for writ of mandate) is reversed. The superior court is directed to issue a new order denying the writ. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Jones, P. J., and Bruiniers, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 8, 2012, S202609.